UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

THE WILLIAM M. YARBROUGH
FOUNDATION and ZANFEL
LABORATORIES, INC.,

      Plaintiffs,

v.                                                   Case No. 1:11-CV-907

GARCOA LABORATORIES, INC.,           HON. GORDON J. QUIST

      Defendant.
_____/

## OPINION

Plaintiffs, the William M. Yarbrough Foundation and Zanfel Laboratories, Inc., have sued Defendant, Garcoa Laboratories, Inc., in a multi-count Amended Complaint alleging various claims, including patent infringement, copyright infringement, trademark infringement, unfair competition and violation of the Michigan Consumer Protection Act. Garcoa has filed a Motion to Transfer Venue to the Central District of California pursuant to 28 U.S.C. § 1404(a) (dkt. no. 20). For the following reasons, the Court will grant Garcoa's motion.[1]

---

[1] Plaintiffs filed their initial Complaint solely against Garcoa on August 27, 2011. (Dkt. # 1.) Following a series of extensions of time to serve the summons and Complaint, Plaintiffs finally served Garcoa on April 26, 2012. (Dkt. # 16.) Plaintiffs filed their First Amended Complaint on May 9, 2012, which added Garcoa's Chief Executive Officer, Gregory A. Rubin, as a defendant. (Dkt. #17.) Garcoa and Rubin filed the instant motion on June 15, 2012. The motion requested dismissal for lack of personal jurisdiction over both Garcoa and Rubin and for improper venue. In the alternative, Garcoa and Rubin requested a transfer of venue pursuant to 28 U.S.C. § 1404(a). Subsequently, the parties stipulated to a dismissal without prejudice of the claims against Rubin. (Dkt. #24.) In addition, on November 14, 2012, pursuant to the parties' stipulation, the Court dismissed Garcoa's motions to dismiss for lack of personal jurisdiction and lack of venue, (dkt. # 33), leaving the Motion to Transfer Venue as the only pending motion.

## I. BACKGROUND

The Foundation is the owner, and Zanfel is the exclusive licensee, of United States Patent Nos. 7,008,963 and 6,423,746 (the patents-in-suit), which cover a topical wash treatment for poison ivy, poison oak, and poison sumac. (Yarbrough Decl. ¶¶ 2, 4, dkt. # 34-1.) The Foundation is an Illinois not-for-profit corporation with a place of business in Chicago, Illinois. (1st Am. Compl. ¶ 8, dkt. #17.) Zanfel is an Illinois corporation with a place of business in Peoria, Illinois. (*Id.* ¶ 9.) William M. Yarbrough is the inventor of the poison ivy treatment, as well as the Foundation's and Zanfel's principal. Yarbrough resides in Peoria, Illinois. (Yarbrough Decl. ¶¶ 3–4.)

William L. King III is Plaintiffs' primary patent attorney and trial counsel in the instant case. (*Id.* ¶ 4; King Decl. ¶ 1, dkt. # 34-2.) King and his firm, King & Partners, PLC, reside in Holland, Michigan. (King Decl. ¶ 1.) King prosecuted the patent applications that ultimately led to the issuance of the patents-in-suit. (*Id.* ¶ 2.) As part of his services to Plaintiff, King regularly monitors products in stores that might infringe the patents-in-suit. (Yarbrough Decl. ¶ 5; King Decl. ¶ 3.) In August 2011, King discovered an unauthorized poison ivy wash sold by Garcoa Laboratories, Inc. at a Walgreens pharmacy in Holland, Michigan. After King informed Yarbrough of his discovery, Yarbrough instructed King to file suit in the Western District of Michigan. (*Id.*)

Garcoa is an Ohio corporation with its sole place of business in Calabasas, California. Gregory Rubin is Garcoa's Chief Executive Officer. Garcoa has no facilities or employees in Michigan and is not registered to conduct business in Michigan. (Def.'s Br. Supp. Mot. Transfer at 4, dkt # 20.) Meijer, Inc. is Garcoa's only Michigan-based customer, but Garcoa has never sold the accused product to Meijer. (Rubin Decl. ¶ 6, dkt. # 10-2.) Garcoa has sold its poison ivy wash to Wal-Mart, Walgreens and CVS Caremark Corp., but the products involved in these transactions were shipped to warehouses outside of Michigan, located in Arkansas, Illinois and Rhode Island.

(Def.'s Br. Supp. Mot. Transfer at 4.)  All of Garcoa's records and documents pertaining to the formulation and sale of Garcoa's product, and all of its records pertaining to the design and labeling of the packaging are maintained in Garcoa's offices in California.  (Rubin Decl. ¶ 9.)

## II. Motion Standard

Garcoa argues that the case should be transferred to the Central District of California, where Garcoa's place of business is located, because that venue is more convenient than Michigan for the parties and witnesses.  A court may transfer venue "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).[2]  "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness."  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S. Ct. 2239, 2244 (1988) (internal quotation marks omitted).

On a motion to transfer under § 1404(a), the moving party bears the burden of proving why a court should transfer the action.  *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879–80 (3d Cir. 1995); *Factors, Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978).  This burden is a heavy one and requires the moving party to show that the balance of factors weighs strongly in favor of transfer.  *See Holiday Rambler Corp. v. Am. Motors Corp.*, 254 F. Supp. 137, 139 (W.D. Mich. 1966). A court should deny a motion to transfer venue if a change of venue serves merely to shift the inconvenience from the defendant to the plaintiff.  *Van Dusen v. Barrack*, 376 U.S. 612, 645–46, 84 S. Ct. 805, 824 (1964) ("Section 1404(a) provides for transfer to a more convenient forum, not to forum likely to prove equally convenient or inconvenient.").

---

[2] Three requirements must be satisfied before a court may transfer a case under § 1404(a): "(1) the action could have been brought in the transferee court; (2) a transfer serves the interest of justice; and (3) transfer is in the convenience of the witnesses and parties."  *Kepler v. ITT Sheraton Corp.*, 860 F. Supp. 393, 398 (E.D. Mich. 1994). It is undisputed that the first requirement is met, because Plaintiffs could have sued Garcoa in the Central District of California.

3

In considering a motion to change venue under § 1404(a), "a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness. . . ." *Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991). The private interests of the parties include:

> (1) the convenience to the parties; (2) the convenience of witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems indicating where the case can be tried more expeditiously and inexpensively; and (7) the interests of justice, a term broad enough to cover the particular circumstances of each case, which in sum indicate that the administration of justice will be advanced by a transfer.

*Campbell v. Hilton Hotels Corp.*, 611 F. Supp. 155, 157 (E.D. Mich. 1985) (quoting *Schneider v. Sears*, 265 F. Supp. 257, 263 (S.D.N.Y. 1967)). Public interest factors include: (i) the enforceability of the judgment; (ii) practical considerations affecting trial management; (iii) docket congestion; (iv) the local interest in deciding local controversies at home; (v) the public policies of the fora; and (vi) the familiarity of the trial judge with the applicable state law. *See Jumara*, 55 F.3d at 879–80.

### III. ANALYSIS

**A.     Private Interest Factors**

*Plaintiffs' Choice of Forum*

In general, a plaintiff's choice of forum is entitled to weight in the transfer analysis, although it is not alone dispositive. *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 413 (6th Cir. 1998). Courts often indicate that the plaintiff's choice of forum is entitled to "great weight" or "substantial weight" in the analysis. *See Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) (noting that "great weight is generally accorded the plaintiff's choice of forum"); *Hutchins v. T1 Tequila, LLC*, No. 1:11CV557, 2013 WL 3289128, at *6 (N.D. Ohio June 28, 2013) ("It has been said that plaintiff's

choice of forum is entitled to great weight." (internal quotation marks omitted)). "Where the plaintiff's forum choice is neither its state of residence nor the location of the occurrence upon which the suit is based, that forum choice is entitled to less weight." *Zenith Prods. Corp. v. Design Home Solutions, LLC*, No. 10-148, 2010 WL 2136569, at *2 (E.D. Pa. May 24, 2010) (citing *Pro Spice, Inc. v. Omni Trade Group, Inc.*, 173 F. Supp. 2d 336, 341 (E.D. Pa. 2001)). "This is true even when the plaintiff's home district is adjacent to the forum." *Nabisco, Inc. v. Brach's Confections, Inc.*, No. 00CIV5875(AGS), 2000 WL 1677935, at *4 (S.D.N.Y. Nov. 8, 2000).

Plaintiffs contend that the Court should give their choice of forum substantial deference because they had several legitimate reasons for choosing this district, including that: (1) they have previously litigated the validity, enforceability, and infringement of the patents-in-suit in this district and, thus, this district is already familiar with those patents; (2) all of Plaintiffs' documents that are relevant to the patents-in-suit are in this district; (3) Plaintiffs will likely call several Michigan residents as witnesses; (4) Plaintiff Zanfel sells its poison ivy wash at over 200 pharmacies in Michigan; and (5) the accused product is sold in Michigan. Garcoa argues that Plaintiffs' choice of forum should be given little weight because neither the Foundation nor Zanfel reside in this district, and their only connection to this district is that their attorneys are located here.

The Court finds no reason to accord Plaintiffs' choice of forum anything more than minimal weight in this case. Neither Plaintiff resides in this district—both are Illinois residents. The fact that Plaintiffs' counsel's offices are located in this district is irrelevant, as "[t]he convenience of the plaintiff's counsel is not entitled to any weight in the analysis." *Biometics, LLC v. New Womyn, Inc.*, 112 F. Supp. 2d 869, 876 (E.D. Mo. 2000); *see also Millennium Cryogenic Techs., Ltd. v. Weatherford*, No. 11-cv-01971-WJM-CBS, 2012 WL 1015786, at *3 (D. Colo. Mar. 23, 2012) ("The location and convenience of Plaintiff's counsel . . . are not relevant factors in deciding a

motion to transfer."). Likewise, Plaintiffs make too much of their previous cases in this district. Although it is true that the patents-in-suit were previously litigated in a case filed in this district, *see William M. Yarbrough Found., et al. v. Rite Aid Corp., et al.*, No. 1:06-CV-348 (W.D. Mich.), Plaintiffs' assertion that this district, or this district judge in particular, is already familiar with the patents is not correct. While the undersigned was originally assigned Case No. 1:06-CV-348, the case was subsequently reassigned to Senior District Judge Avern C. Cohn, of the Eastern District of Michigan, on April 25, 2007, (Case No. 1:06-CV-348, dkt. # 84), who did all of the "heavy lifting" in the case, including deciding claim construction issues. (*Id.*, dkt. # 124.) Therefore, the undersigned would be starting from scratch in becoming familiar with the patents-in-suit, as would any judge in the Central District of California to whom the case may be transferred. Finally, the fact that the accused product, which apparently is sold at least regionally if not nationally, is also sold in Michigan provides no more than a tenuous connection to Michigan. It is well settled that in a patent infringement case, "the situs of the injury is the location, or locations, at which the infringing activity directly impacts on the interests of the patentee." *Body Sci. LLC v. Boston Scientific Corp.*, 846 F. Supp. 2d 980, 993 (N.D. Ill. 2012) (internal quotation marks omitted). Where, as here, a defendant's products are sold throughout the country, a sale in a particular state is not determinative of the situs of the injury. *Id.* Rather, "the location of the infringer's principal place of business is often the critical and controlling consideration because such suits often focus on the activities of the alleged infringer, its employees, and its documents, rather than upon those of the plaintiff." *Id.* at 992; *see also Zenith Prods. Corp.*, 2010 WL 2136569, at *4–5 (concluding that the material events occurred in the transferee district, where the infringing product was designed and developed; the fact that the product was sold in the plaintiff's chosen venue was insufficient to establish a connection with that district because the product was sold through Costco stores nationwide); *Walker v. Jon*

*Renau Collection, Inc.*, 423 F. Supp. 2d 115, 119 (S.D.N.Y. 2005) ("Where the nexus of the allegedly infringing activity is in the transferee District, it is insufficient to find a connection to New York based solely on sales of the product that took place here."). The locus of the operative facts is thus California, rather than Michigan. Accordingly, Plaintiffs' choice of forum is entitled to minimal weight.

### *Convenience of the Parties*

Garcoa contends that the Central District of California, where it is located and Rubin resides, is the most convenient forum for Garcoa. Garcoa further notes that this forum is not the most convenient forum for Plaintiffs because they do not reside in this district. Plaintiffs respond that transferring this case to California would simply shift the inconvenience from Garcoa to Plaintiffs, which is insufficient to warrant transfer.

Neither party claims, nor is there any indication in the record, that litigating in this district would impose a significantly greater financial burden than litigating in the Central District of California, or vice-versa. *See Country Maid, Inc. v. Haseotes*, 312 F. Supp. 1116, 1118 (E.D. Pa. 1970) ("This vast difference in size and scale of [the parties'] operations necessarily magnifies the extent of any inconvenience the plaintiff might experience as a result in favor of the defendants."). However, "[i]n a patent infringement case, practicality and convenience are best served when it is prosecuted where the alleged acts of infringement occurred and the defendant has a regular and established place of business so as to facilitate the production and investigation of books, records and other data necessary to the trial techniques employed in the patent field." *Addiction & Detoxification Inst. v. Rapid Drug Detox Ctr.*, No. 11-cv-792, 2013 WL 951115, at * 3 (N.D. Ill. Mar. 11, 2013) (internal quotation marks omitted). Although a transfer to California would shift the inconvenience from Garcoa to Plaintiffs, the Court concludes that this factor weighs heavily in favor

of transfer because California is where the substantial part of Garcoa's alleged infringing activities—the production and sale of the accused product—occurred.  *See id.* (concluding that Michigan, rather than Illinois, was the more convenient forum, even though the defendant targeted some of the plaintiff's customers in Illinois, because "the alleged infringing procedures all occurred in Michigan, Rapid Detox's principal place of business"); *Saint-Gobain Calmar, Inc. v. Nat'l Prods. Corp.*, 230 F. Supp. 2d 655, 660–61 (E.D. Pa. 2002) ("The District Court of South Carolina would be a more convenient venue because it is closer to the hub of activity surrounding the production and sale of allegedly infringing trigger sprayers.").

### *Convenience of the Witnesses*

"The convenience of the witnesses is probably the single most important factor in a transfer analysis."  *In re Genentech, Inc.*, 566 F.3d 1388, 1342 (Fed. Cir. 2009); *see also Gerling Am. Ins. Co. v. FMC Corp.*, No. 97 Civ. 6473(LMM), 1998 WL 410898, at *3 (S.D.N.Y. July 22, 1998).  However, while "convenience to the witnesses is often recognized as the most important factor to be considered" in deciding a change of venue motion, "[i]t is the convenience of non-party witnesses, rather than employee witnesses . . . that is the more important factor and is accorded greater weight." *Gundle Lining Constr. Corp. v. Fireman's Fund Ins. Co.*, 844 F. Supp. 1163, 1166 (S.D. Tex. 1994).  To substantiate a claim of inconvenience to witnesses, a party should provide each witness's name and a summary of the anticipated testimony to enable the court to assess the significance of the testimony.  *See Thomas v. Home Depot, U.S.A., Inc.*, 131 F. Supp.2d 934, 937 (E.D. Mich. 2001).

Garcoa indicates that it currently intends to call two witnesses—Rubin, Garcoa's CEO, and Kip Bowers, Garcoa's Director of New Product and Packaging Development.  Rubin resides in Calabasas, California, and Bowers resides in Murfreesboro, Tennessee.  (Rubin Decl. ¶ 8.)  Garcoa

does not explain the nature of its witnesses' proposed testimony, but the subjects as to which Rubin and Bowers will testify seem apparent from their positions with Garcoa. Garcoa contends that trial in this district will require the absence of all individuals who have control over Garcoa's day-to-day operations and will likely cause substantial damage to Garcoa, but Garcoa provides no specific facts about its operations to support this dramatic claim.

Plaintiffs identify several witnesses they intend to call, including Dr. Michael E. Silver, an independent contractor and technical consultant who participated in the prosecution of the patents-in-suit and tested the accused products. Dr. Silver resides and works in this district and also tested the accused products in this district. (Pls.' Mem. Opp'n Def.'s Mot. at 6.) Plaintiffs also identify three attorneys, including William King and Jovan N. Jovanovic, both of whom participated in the prosecution of the patents-in-suit and work and reside in this district. Attorney King also discovered the accused product being sold in this district. Plaintiffs state that they will offer attorneys Jovanovic and King as fact witnesses. (*Id.* at 7.) The third attorney, Terry S. Callaghan, is a patent attorney whom Plaintiffs intend to call as an expert witness in the event Garcoa challenges the validity, enforceability, and/or infringement of the patents-in-suit. Attorney Callaghan also works and resides in this district. (*Id.*) Finally, Plaintiffs state that they intend to call William M. Yarbrough, the inventor of the wash product covered by the patents-in-suit and the principal of both the Foundation and Zanfel, who lives and works in Peoria, Illinois.

Although not themselves parties to the litigation, Garcoa's witnesses are high-level employees of Garcoa who should be considered party witnesses. The Court thus assumes that Rubin and Bowers will attend the trial regardless of whether it is held in this district or in California. Moreover, the Court gives less weight to their convenience in its analysis. *See Empty Barge Lines II, Inc. v. DREDGE LEONARD FISHER*, 441 F. Supp. 2d 786, 793 (E.D. Tex. 2006) ("Where the

key witnesses are employees of the party seeking a transfer, their convenience is entitled to less weight because the party is able to compel their attendance."). The Court also notes that a trial in this district would actually be *more* convenient for Bowers in terms of travel than a trial in California, as Grand Rapids, Michigan is only slightly more than six hundred miles from Murfreesboro, Tennessee, while the Central District of California is approximately two thousand miles from Murfreesboro. As for Plaintiffs' witnesses, the Court notes that because Dr. Silver and Mr. Callaghan are experts, their convenience is entitled to minimal weight in the transfer analysis. *See J.B. ex rel. Benjamin v. Abbott Labs. Inc.*, No. 12-cv-385, 2013 WL 452807, at *4 (N.D. Ill. Feb. 6, 2013) (noting that "[t]he convenience of the party witnesses, including experts, treating physicians, and Abbott's employees, is not critical to [the § 1404(a)] analysis"); *Houston Trial Reports, Inc. v. LRP Pubs., Inc.*, 85 F. Supp. 2d 663, 669 (S.D. Tex. 1999) ("The convenience of expert witnesses weighs little in the [§ 1404(a)] analysis."). Similarly, because Yarbrough is a principal of both the Foundation and Zanfel, the Court assigns little weight to his convenience. As for attorneys King and Jovanovic, the Court considers them as non-party fact witnesses concerning the prosecution of the patents-in-suit. Even so, there is no indication that their testimony will have any particular importance to the case, especially because there is no indication at this point that Garcoa intends to contest the validity or enforceability of the patents-in-suit.[3]

Given that the witnesses on both sides are largely party or expert witnesses, the Court concludes that witness convenience is not a significant factor in this particular case. However,

---

[3] The fact that attorney King will testify that he discovered the infringing product for sale in this district is, in the Court's view, of little importance to the transfer analysis as Plaintiffs do not claim that no other witness can testify about the presence of the accused products for sale in Wal-Mart or Walgreens stores. *See Zenith Prods. Corp.*, 2010 WL 2136569, at *5 ("As the alleged infringing products are sold nationally, there will undoubtedly be a witness available to testify to the presence of the infringing products in Costco stores for whom travel to the Southern District of Florida would not be inconvenient.").

because trial in California would be more inconvenient for Plaintiff's non-party attorney witnesses—one of whom is Plaintiffs' trial counsel, this factor weighs only slightly against transfer.[4]

### *Location of Sources of Proof*

Garcoa contends that because all of the evidence relating to the accused product is located in California, transfer of the case would substantially reduce the time and expense it would be required to incur in producing documents if the case remains in Michigan. Plaintiffs respond that all of their documents relating to the patents-in-suit are located at their counsel's office in this district and, thus, transferring the case would simply shift the inconvenience from one party to the other. Plaintiffs also note that because advances in technology have minimized burdens associated with extensive document production, Garcoa's claim of inconvenience is entitled to little, if any, weight.

"Typically, the accessibility and location of sources of proof should weigh only slightly in this Court's transfer analysis, particularly since these factors have been given decreasing emphasis due to advances in copying technology and information storage." *Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 778 (E.D. Tex. 2000); *see also Trinity Indus. Leasing Co. v. Midwest Gas Storage, Inc.*, No. 1:11-cv-1579-JMS, 2013 WL 212929, at *5 (S.D. Ind. Jan. 18, 2013) ("[G]iven advances in modern technology relating to the exchange of documents and information, the location of relevant documents does not carry as much weight in the transfer analysis."). At the same time, the court is not free to ignore these considerations entirely. *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1224 (Fed. Cir. 2011).

---

[4] The parties agree that the availability of process to compel unwilling witnesses and the cost of obtaining the presence of unwilling witnesses are factors that have no bearing on the transfer analysis.

Although both parties contend that they maintain all of their pertinent documents in their respective preferred districts, neither party has shown that it has substantially more documents than the other or that document production in one district or the other would be substantially more burdensome or expensive. While, in the Court's judgment, Garcoa likely has a greater number of relevant documents to produce than Plaintiffs, this factor is essentially neutral in the Court's analysis and will be given no weight.

*Practical Problems and Interests of Justice Factors*

Neither party has presented any compelling argument for the application of these factors to the circumstances of this case. Although Plaintiffs suggest that this district has a connection to this lawsuit that would provide for a more expeditious conclusion in this district, as the Court has already explained, it is no more familiar with the patents-in-suit than any judge in the Central District of California. Thus, there is no reason to believe that a trial in this district, as opposed to the Central District of California, would be more expeditious or less expensive. Therefore, these factors are neutral.

**B.     Public Interest Factors**

Public interest considerations are essentially neutral in this case. Although Garcoa initially suggested that issues pertaining to personal jurisdiction and venue support transferring the case to California, Garcoa's argument is no longer plausible in light of its stipulation to withdraw its motion to dismiss on those grounds.

Plaintiffs contend that considerations of trial management and docket congestion support retaining the case in this district, where the case would be resolved sooner. As support, Plaintiffs cite 2011 Federal Court Management Statistics for the Western District of Michigan and the Central District of California. According to those statistics, in 2011, judges in this district had an average

of 446 pending cases, while judges in the Central District of California had an average of 450 cases. (King Decl. Ex. B, dkt. # 34-4.) Plaintiffs also note that the statistics show that 3.7 percent of the cases in this district were more than 3 years old, while 6.0 percent of cases in the Central District of California were more than 3 years old. (*Id.*) By themselves, however, these figures prove nothing about docket congestion or case efficiency. For example, the same statistics also show that the median time between filing and disposition of civil cases in this district was 6.4 months, while the median time between filing and disposition of civil cases in the Central District of California was 5.5 months. Similarly, the median time from filing to trial of civil cases in this district was 31.4 months, while the median time between filing and trial of civil cases in the Central District of California was 19.7 months. (*Id.*) Thus, Plaintiffs' own statistics suggest that the case would be concluded sooner, whether by way of trial or other disposition, in the Central District of California than in this district. Thus, this factor weighs in favor of transfer.

Plaintiffs also cite this district's familiarity with the patents-in-suit, but this argument fails for the reasons stated above. Plaintiffs also contend that because they have alleged claims based on Michigan law, this Court has a greater interest in deciding this case than the Central District of California. While "a venue's familiarity with the governing state law is an additional factor to be considered . . . [,] this factor is generally given little weight in the federal courts because federal courts are deemed capable of applying the substantive law of other states." *Tole v. Glenn Miller Prods., Inc.*, No. 12 Civ. 6660(NRB), 2013 WL 4006134, at *5 (S.D.N.Y. Aug. 6, 2013) (internal quotation marks and citation omitted). In addition, Plaintiffs do not contend that their Michigan-law claims are complex. *See Cincinnati Ins. Co. v. O'Leary Paint Co.*, 676 F. Supp. 2d 623, 638 (W.D. Mich. 2009) (stating that "in the absence of any legal issues which seem complex, the necessity for either court to apply another State's law would not be a weighty factor anyway"). Moreover, as is

evident from Plaintiffs' response to Garcoa's motion, the patent claims tend to dominate the case—at least with regard to Plaintiffs' choice of forum. Because the patent claims are based on federal law, both forums are equally familiar with the governing law. *See France Telecom S.A. v. Marvell Semiconductor, Inc.*, No. 12 Civ. 4986(JSR), 2012 WL 6808527, at *2 (S.D.N.Y. Dec. 28, 2012) (noting that the chosen forum and the proposed transferee district were "equally capable of adjudicating this patent action grounded in federal law"). Thus, the Court gives this factor little weight.

Finally, regarding the local interest factor, "in a patent infringement case, when the accused systems are used nationwide, the alleged injury does not create a substantial local interest in any particular district." *Landmark Tech., LLC v. Ann Inc.*, No. 6:12-cv-672-MHS-JDL, 2013 WL 3354451, at *4 (E.D. Tex. July 1, 2013) (citing *In re TS Tech USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008)); *see also Caterpillar, Inc. v. ESCO Corp.*, 906 F. Supp. 2d 1026, 1035 (C.D. Ill. 2012) (noting that because "patent law is nationally uniform, there is no choice of law issue to consider, and no state has a greater interest than any other in promoting the goals of the patent system"). However, a local interest may arise when a district is home to a party because the suit may call into question the work and reputation of individuals residing in the district. *In re Hoffman-LaRoche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009). In this case, Michigan—one of many states in which the accused product is sold—has no particular interest in this controversy. In contrast, Garcoa's principal offices are in the Central District of California, which is also where the accused products were developed and manufactured. Because this patent infringement action calls into question the work and reputation of individuals residing in the Central District of California, this factor weighs in favor of transfer to that district. *See Landmark Tech., LLC*, 2013 WL 3354451, at *4.

### C.      Balancing the Factors

As set forth above, the Court gives only slight deference to Plaintiffs' choice of forum because Plaintiffs do not reside in this district and this district has only a minimal connection to the controversy.  Factors weighing against transfer include convenience of the witnesses and this Court's familiarity with Michigan law, although the Court assigns these factors minimal weight.  On the other hand, the convenience of the parties, the locus of operative facts, considerations of trial management (including shorter time to disposition), and the interest of the Central District of California in resolving a controversy involving residents of that district weigh in favor of transfer.  Location of sources of proof, practical problems, and the interests of justice are largely neutral.  On balance, the Court concludes that the pertinent § 1404(a) factors weigh in favor of transferring the case to the Central District of California.

### IV.  CONCLUSION

For the foregoing reasons, the Court will grant Garcoa's Motion to Transfer Venue to the Central District of California.

An Order consistent with this Opinion will issue.


Dated: August 12, 2013                              /s/ Gordon J. Quist
                                                                    GORDON J. QUIST
                                                       UNITED STATES DISTRICT JUDGE